# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH MCQUEEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIMARY ARMS, LLC,<br><br>Defendant. | Case No.<br><br>**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT** |

## NOTICE OF REMOVAL

Defendant Primary Arms, LLC ("Defendant" or "PA"), by and through its undersigned counsel, removes the above-captioned action currently pending in the Pennsylvania Court of Common Pleas of Montgomery County to the United States District Court for the Eastern District of Pennsylvania on the grounds that the Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## NATURE OF THE CASE

1. On February 24, 2025, Plaintiff Kenneth McQueen ("Plaintiff" or "McQueen") filed a verified complaint ("State Complaint") in the Court of Common Pleas of Montgomery County, Pennsylvania. Plaintiff served Defendant with the State Complaint on February 26, 2025.

2. In the State Complaint, Plaintiff alleges that, after he "purchased a Seekins Precision SP10 6.5 Creedmoor Semi-Automatic AR-10 Rifle" on Defendant's

1

website, he "viewed several targeted advertisements from Defendant on social media and YouTube." [Compl., ¶ 6.]

3. Plaintiff further alleges that Defendant's website "hosts code for [a company called] Listrak, which allows Listrak to intercept consumers', including Plaintiff's, electronic communications." [*Id*. at ¶ 10.]

4. Based on these allegations, Plaintiff brings claims against Defendant for violations of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. § 5701 *et seq*. and Pennsylvania's Uniform Firearms Act ("UFA"), 18 Pa. Cons. Stat. § 6111(i).

5. Plaintiff seeks to represent "all Pennsylvania residents who have purchased firearms from www.primaryarms.com (the 'Website')." [*Id*. at ¶ 1.]

## PROCEDURAL HISTORY

6. Plaintiff previously filed this complaint (the "First Federal Complaint") in U.S. District Court for the Eastern District of Pennsylvania on February 20, 2024. *See McQueen v. Primary Arms, LLC*, Case No. 2:24-cv-00725 (E.D. Pa. Feb. 20, 2024) (the "First Action").

7. The First Action was almost identical in all material respects to the present action, except that in the First Action, Plaintiff asserted that "[the Eastern District of Pennsylvania] ha[d] subject matter jurisdiction over th[e] action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ('CAFA'), which, inter alia, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed class; (b) some members of the proposed Class have a different

citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate." [First Action, ECF 1 at ¶ 3.]

8. On May 15, 2024, after PA had moved to dismiss Plaintiff's First Federal Complaint, [*see id.*, ECF 12], Plaintiff, instead of responding to PA's motion to dismiss, filed a First Amended Class Action Complaint (the "Second Federal Complaint") in this Court, asserting for the second time that the Eastern District of Pennsylvania had original jurisdiction over this case pursuant to CAFA, [*id.*, ECF 15 at ¶ 3].

9. On April 25, 2024, PA moved to stay the First Action pending resolution of *In re: BPS Direct Cabela's, LLC, Wiretapping Litigation,* Case No. 23-03235 (3d. Cir.). [*Id.*, ECF 8, 16.] Plaintiff opposed the stay. [*Id.*, ECF 14.] The Court ultimately stayed the First Action pending a final decision in *In re: BPS*. [*Id.*, ECF 23.]

10. Rather than abiding by the Court's stay, Plaintiff voluntarily dismissed the First Action without prejudice on February 11, 2025, almost a full year after first bringing suit in federal court. [*Id.*, ECF 26.]

11. Two weeks later, Plaintiff filed this substantively identical action in state court.

**VENUE**

12. Removal to this District is proper because this Court embraces Montgomery County, Pennsylvania. 28 U.S.C. §§ 118(b), 1441(a).

3

## REMOVAL IS TIMELY

13. Plaintiff initiated this action on February 24, 2025, in the Court of Common Pleas of Montgomery County, Pennsylvania. A true and correct "copy of all process, pleadings, and orders" currently on file in the state court, including Plaintiffs' State Complaint, is attached as **Exhibit A** hereto. *Id.* § 1446(a).

14. Defendant files this Notice of Removal on March 17, 2025, which is within thirty days of the formal service that occurred on February 26, 2025. 28 U.S.C. § 1446(b).

15. Defendant will promptly give written notice to all adverse parties and the clerk of the Court of Common Pleas of Montgomery County. *Id.* § 1446(d).

## RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

16. Nothing in this Notice is intended or should be construed as an express or implied admission by Defendant of any fact alleged by Plaintiff, of the validity or merit of any of Plaintiff's claims or allegations, or as a limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action, including that the Court lacks personal jurisdiction over PA or that PA is entitled to seek transfer of this action to a different forum. [*See* First Action, ECF 12.]

17. By this removal, Defendant does not waive any procedural or substantive defenses to Plaintiff's claims that may be available to it under federal or state law.

18. Defendant does not concede liability to any of the claims asserted in the State Complaint or that Plaintiff or the putative class members are entitled to recover any damages.

## THE TRADITIONAL DIVERSITY REQUIREMENTS ARE SATISFIED

19. To establish traditional diversity, (1) the parties must be completely diverse, *i.e.*, no plaintiff is a citizen of the same state as any defendant, and (2) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1); *Lan Tu Trinh v. Citizen Bus. Banking*, No. CV 18-1662, 2019 WL 2331450, at *1 (E.D. Pa. May 29, 2019), *aff'd sub nom. Trinh v. Citizen Bus. Banking*, No. 19-2468, 2020 WL 2787637 (3d Cir. May 29, 2020). Both elements are established here.

A. *Plaintiff and Defendant Are Citizens of Different States*

20. Plaintiff is "an adult citizen of the Commonwealth." [Compl., ¶ 6.] For diversity purposes, individuals are considered "citizens" of their place of domicile, "and the domicile of an individual is his true, fixed and permanent home and place of habitation." *Friedrich v. Davis*, 767 F.3d 374, 378 (3d Cir. 2014) (citation omitted). Here, Plaintiff alleges he is "domiciled" in the state of Pennsylvania. [Compl., ¶ 6.] Plaintiff is therefore a Pennsylvania citizen for diversity purposes.

21. Defendant is an LLC with headquarters in Houston, Texas. [*Id.* at ¶ 7.] For diversity purposes, the citizenship of an LLC is determined by the citizenship of each of its members. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013); *see also Rice v. Westrock CP LLC*, CIVIL ACTION NO. 24-CV-5798, 2025 WL 220020, at *2 (E.D. Pa. Jan. 15, 2025) (citing *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)).

22. Here, PA is comprised of two members, both of whom are individuals who permanently reside in Texas, maintain Texas driver's licenses, vote in Texas,

5

and are therefore domiciled in Texas. Accordingly, because each member of PA is a citizen of Texas, PA is likewise a citizen of Texas.

23. At the time this action was filed and as of the date of this Notice of Removal, McQueen and PA are citizens of different states, satisfying the first traditional diversity element under 28 U.S.C. § 1332 (a)(1).

B. *The Amount in Controversy Exceeds $75,000*

24. A defendant may remove a case to federal court pursuant to 28 U.S.C. § 1332(a) on the grounds that the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 13332(b). In traditional diversity, "the amount-in-controversy requirement will be satisfied if a single plaintiff's claims, taken alone, total more than $75,000." *Harvey v. U.S. Life Ins. Co. in City of N.Y.*, No. CIV. A. 08-2175, 2008 WL 2805608, at *1 (E.D. Pa. July 18, 2008).

25. The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Plaintiff is master of his complaint and, "[i]n removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398–99 (3d Cir. 2004).

26. Here, Plaintiff's civil cover sheet lists a vague and indeterminate amount of "[m]ore than $50,000" as the amount in controversy. Where, as here, "a claim for damages is open-ended, [t]he court must measure the amount 'not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value

of the rights being litigated.'" *Chun Hui Lin v. Mid-Century Ins. Co.*, No. CV 20-3876, 2020 WL 5705907, at *2 (E.D. Pa. Sept. 24, 2020) (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002)). Further, where, as here, a plaintiff's complaint does not categorize or break down the amount in controversy, "the Court must defer to reasonable estimations of the Defendant[] for the amount in controversy[.]" *Doe v. DLP Conemaugh Mem'l Med. Ctr., LLC,* No. 3:23-CV-110, 2023 WL 5993016, at *5 (W.D. Pa. Sept. 15, 2023) ("Given the lack of any value of damages in Plaintiffs' [complaint], the Court must defer to reasonable estimations of the Defendants for the amount in controversy in a contested removal action.").

27. **WESCA Damages.** Plaintiff first seeks damages under WESCA, which allows for: "(1) actual damages, not less than the liquidated damages computed at a rate of $100 per day for each day of violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred." 18 Pa. Cons. Stat. § 5725(a). Plaintiff alleges he was harmed "[o]n or about May 2023," and he first filed this action on February 24, 2025, a span of approximately 655 days (assuming a beginning date of May 1, 2023). Under WESCA, Plaintiff has affirmatively pled entitlement to "$100 per day for each day of violation," or a total of $65,500 in statutory damages on his WESCA claim. *See, e.g., Conemaugh* at *4 ("If Doe alleges two years of violations under WESCA, the amount in controversy in this case is increased by $100 a day times two years at 365 days a year, which amounts to $73,000.").

28. **UFA Damages.**  Plaintiff also seeks damages pursuant to the UFA, which allows for "civil damages in the amount of $1,000 per occurrence or three times the actual damages incurred as a result of the violation, whichever is greater, as well as reasonable attorney fees." [Compl., ¶ 50 (quoting 18 Pa. Cons. Stat. § 6111(i)).] Adding $1,000 in statutory damages Plaintiff claims under the UFA to the potential WESCA damages results in total statutory damages of $66,500 (calculated as WESCA damages ($65,500) + $1,000 UFA damages).

29. **Punitive Damages.**  The Third Circuit recognizes that when a state statute like WESCA allows for punitive damages, that claim alone "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (emphasis and internal quotation marks omitted). In calculating punitive damages, courts in the Third Circuit generally apply a one-to-one ratio of punitive damages to actual damages. *See Lloyd v. Children's Hosp. of Phila.*, No. 2:19-CV-02775-JDW, 2023 WL 2940229, at *10 (E.D. Pa. Apr. 13, 2023). Taking the actual damages calculated above of $66,500, this means Plaintiff may be entitled to, at minimum, an additional $66,500 in punitive damages. Combined with actual damages, the amount in controversy is plainly met here at $133,000 (calculated as $66,500 total statutory + $66,500 punitive = $133,000).

30. **Attorneys' Fees and Other Damages.**  Attorneys' fees and costs *must* be considered here for purposes of establishing the amount in controversy because

8

they are available under WESCA and the UFA. *See, e.g., Henderson v. Nationwide Mut. Ins. Co.*, 169 F. Supp. 2d 365, 368 (E.D. Pa. 2001) ("Attorneys' fees, costs, interest and punitive damages are included in the amount in controversy if they are available to successful plaintiffs under a statutory cause of action."); *see also Farrel v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) ("With regard to the amount-in-controversy, an award of attorneys' fees also must be included as part of that determination where such an award is provided for by statute.") (collecting cases). Controlling case law in the Third Circuit mandates that district courts assume an award of attorneys' fees equal to thirty percent of the judgment. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 357 n.1 (3d Cir. 2015) (estimating that "[a] median recovery range for attorney's fees is approximately 30 percent"); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (noting in a CAFA analysis that attorneys' "[f]ees could be as much as thirty percent of the judgment"). Reasonably estimating attorneys' fees at thirty percent of the damages outlined above adds another $19,950 to the amount in controversy ($133,000 x .3 = $19,950) pled in Plaintiff's State Complaint.

31.   Considering the above damages, in addition to Plaintiff's demand for injunctive relief, prejudgment interest, and any further relief the Court deems just in proper, [Compl., Prayer for Relief], the amount in controversy is met on the face of Plaintiff's State Complaint. That is, Plaintiff's claim for attorneys' fees and costs, combined with the other claimed and available damages above, demonstrate that the amount in controversy exceeds $75,000.

9

32. Removal is therefore proper under "traditional" diversity pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists and the amount in controversy exceeds the threshold minimum of $75,000.

## REMOVAL IS ALSO PROPER UNDER CAFA

33. The Court also has original jurisdiction over this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d).

34. CAFA grants federal courts original jurisdiction over a class action when: (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant," *id*. § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is" not less than one hundred (100), *id*. § 1332(d)(5)(B); and (3) "the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs," *id*. § 1332(d)(2). *See also Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 n.8 (3d Cir. 2009).

35. At the outset, it should be noted that Plaintiff previously invoked his Court's jurisdiction under CAFA *in two separate complaints* in the First Action involving *the same exact class* sought to be represented here. [*See* First Action, ECF 1 at ¶¶ 3, 23 ("Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in Pennsylvania who purchased a firearm from www.primaryarms.com"); ECF 15 at ¶¶ 3, 24 (same).] Accordingly, because Plaintiff has not substantively changed the State Complaint, he cannot now plausibly allege that this Court does *not* have CAFA jurisdiction. Regardless, as outlined below, the Court may properly exercise jurisdiction over this case under CAFA.

A.  *This Case is Pled As a Class Action*

36.  CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332 (d)(1)(B); *Kotsur v. Goodman Global, Inc.*, Civil Action No. 14–1147, 2014 WL 6388432, at *2 (E.D. Pa. Nov. 17, 2014).

37.  Plaintiff brings this action as a "class action" and seeks to represent a class pursuant to Pennsylvania Rules of Civil Procedure 1702 *et seq.* [Compl., ¶ 24 (seeking to represent a class of "all persons in Pennsylvania who purchased a firearm from www.primaryarms.com").] This Court has concluded that Pennsylvania Civil Rule of Civil Procedure 1702 is a "class action" as defined under CAFA. *See Kotsur*, 2014 WL 6388432, at *2 ("Plaintiff filed a state court "class action" as defined by CAFA since it was filed pursuant to Pennsylvania Rule of Civil Procedure 1702."). Accordingly, the first CAFA element is satisfied.

B.  *Minimal Diversity Exists*

38.  Unlike traditional diversity jurisdiction, CAFA only requires "minimal diversity," *i.e.*, that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A)–(B). As already established above, at the time this lawsuit was filed and as of the date of this Notice of Removal, Plaintiff and Defendant are citizens of Pennsylvania and Texas, respectively. Therefore, CAFA's "minimal diversity" of citizenship is satisfied. *See W. Va. ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 445 (E.D. Pa. 2010) ("For CAFA's minimal

diversity requirements to be met, 'only one member of the plaintiff class—named or unnamed—must be diverse from any one defendant.'") (citation omitted).

### C. *The Class Consists of More Than 100 Members*

39. Defendant does not believe that Plaintiff has defined a proper class or that a class can be maintained, and asserts that it is an individualized inquiry as to whether any current or former Pennsylvania resident falls within the proposed class definition or is entitled to relief. Nevertheless, the class as proposed in the State Complaint meets CAFA's threshold of at least 100 putative class members.

40. Here, Plaintiff seeks to represent a class of "all Pennsylvania residents who have purchased firearms from www.primaryarms.com." [Compl., ¶¶ 1, 24.] Here, between approximately May 2023 and March 2024, approximately 900 unique individuals with a Pennsylvania address placed orders for firearms on www.primaryarms.com. The Complaint also claims that the class "is so numerous that joinder of all members is impracticable." [Compl., ¶ 26.] Indeed, Plaintiff "believes the Class contains *at least hundreds of individuals*." [*Id.* (emphasis added).]

41. Based on the above, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

### D. *The Amount in Controversy Exceeds $5 Million*

42. Under CAFA, a federal district court shall have original jurisdiction over a putative class action where the claims of the individual class members, when aggregated, exceed the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in

12

controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart*, 574 U.S. at 90. Indeed, "[n]o evidentiary support is required [to establish the amount in controversy], and the Court should accept a removing defendant's allegations unless they are contested by the plaintiff or questioned by the Court." *Farrell*, 478 F. Supp. 3d at 540. And unlike traditional diversity jurisdiction, CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S 588, 592 (2013).

43.    Here, Plaintiff alleges that he is a typical representative of the class because "all Class members have suffered similar injuries as a result of the same practices alleged herein." [Compl., ¶ 28.] And, as discussed above, based on Plaintiff's own damages' claims based on violations of WESCA and the UFA, Plaintiff is entitled to statutory damages of at least $66,500. Accepting as true that Plaintiff is a typical representative of the class, each of the other 900 putative class members would likewise be entitled to statutory damages of at least $66,500, resulting in statutory damages of $59,850,000 (calculated as 900 x $66,500), punitive damages in the same amount (*see supra* ¶ 29), and attorneys' fees of $17,955,000 (thirty percent of statutory damages). Accordingly, the CAFA amount-in-controversy threshold is satisfied before considering other forms of compensatory damages, or injunctive and declaratory relief, which, as discussed below, add even more to the total amount in controversy.

44. In addition to the above monetary damages, Plaintiff also seeks injunctive relief. "In determining the value of an injunction or declaration, 'the court may look not only at past losses but also at potential harm.'" *Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*, 825 F. App'x 65, 68 (3d Cir. 2020) (citations omitted). At bottom, the injunctive relief sought here would be for Defendant to shutter its online shopping cart, the only method available for customers to purchase firearms or other goods from the PA Website outside of the sole brick-and-mortar store in Houston. Doing so would result in revenue loss of, on average, approximately $16,600,000 to Defendant over the course of only one month (calculated as one month multiplied by the total average approximate revenue PA earns from online purchases nationwide). This adds *even more* to the amount in controversy based on statutory damages alone.

45. Based on the relief requested by Plaintiff in his State Complaint, the amount in controversy far exceeds the $5 million threshold.

E. ***No CAFA Exceptions Exist***

46. The exceptions to CAFA do not apply because Defendant is a citizen of Texas, not Pennsylvania. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II) (local controversy exception requires defendant to be a citizen of the State in which the action was filed); § 1332(d)(4)(B) (home state controversy exception requires primary defendant to be a citizen of the State in which the action was filed); § 1332(d)(3) (same for discretionary exception).

47. Accordingly, Defendant meets all requirements for removal under CAFA, and the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

**WHEREFORE**, Primary Arms, LLC removes this civil action to the U.S. District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated: March 17, 2025                     Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Sarah A. Ballard*
Sarah A. Ballard (PA Bar No. 327879)
1801 California Street, Suite 4400
Denver, CO  80202
Tel.: (303) 861-0600
Email: sballard@bakerlaw.com

*Counsel for Defendant Primary Arms, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2025, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Sarah A. Ballard*
*Counsel for Defendant Primary Arms, LLC*
